UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case Number:_____

ROBERT MITCHELL,

    Plaintiff,

vs.

CITY OF MIAMI BEACH,

    Defendant.

_____/

## Complaint—Jury Trial Demanded

Plaintiff, Robert Mitchell, sues defendant, City of Miami Beach, and

shows:

### Introduction

1.    This is a discrimination and retaliation action brought by Robert

Mitchell, a 65-year-old white police officer, who, ***One***, was passed over for

and denied the types of assignments and opportunities for extra pay and

training needed for advancement that the City of Miami Beach provided to

substantially younger officers outside his protected class; ***Two***, was

subjected to unwarranted scrutiny similar to that to which other older

officers have been subjected, and, ***Three***, was retaliated against after he

engaged in protected activity, including having his performance evaluation

and attendant raises delayed. Officer Mitchell sues under the Age

Discrimination in Employment Action, 29 U.S.C. § 621, et seq. ("ADEA");

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et

seq ("Title VII"), and the Florida Civil Rights Act of 1992, Chapter 760,

Florida Statutes ("FCRA"), for damages and equitable relief, reasonable

attorney's fees and litigation expenses.

### Jurisdiction and Venue

2.    The court has jurisdiction under 28 U.S.C. § 1331 (federal

question).   The court has supplemental jurisdiction under 28 U.S.C. § 1367

to hear plaintiff's state law claims under the FCRA.

3.    Venue is proper in the Southern District of Florida under 28

U.S.C. § 1391(b) because the claims arose there and defendant is submitted

to personal jurisdiction there.

### Parties

4.     Plaintiff, Robert Mitchell, at all times material was employed by

the City of Miami Beach as a police officer, and as such, was an "employee"

or "aggrieved person" under the ADEA, Title VII and the FCRA.  He is

protected by:

        a.    the ADEA and the FCRA because of his age (65);

        b.    Title VII and the FCRA because of his, race, sex and

national origin (white, non-Hispanic male), and

c.      the ADEA, Title VII and the FCRA because he opposed illegal employment practices under the FCRA, filed charges of discrimination and participated in the investigation of charges of discrimination.

5.      Defendant,  City of Miami Beach  ("the City" or "defendant"), is a Florida municipal corporation. It is, and, at all times material, was an "employer" as envisioned by Title VII, the ADEA and the FCRA.

### Satisfaction of conditions precedent

6.      Plaintiff, on or about November 27, 2019, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race, sex, age and national origin discrimination, which by operation of law was deemed dual filed with the Florida Commission on Human Relations and sufficient to invoke his rights and remedies under the FCRA ("First COD").

7.      On or about May 8, 2020, plaintiff filed an amended and supplemental charge of discrimination, alleging race, sex, age and national origin discrimination and retaliation ("Second COD").

8.      The EEOC, at Officer Mitchell's request and because more than 180 days had passed since the filing of the charges, issued Officer Mitchell a Notice of  Right to Sue (Issued on Request) on May 5, 2021.

9.      More than 180 days elapsed from the filing of each charge of discrimination without the Florida Commission on Human Relations either conciliating the charge or making a no-cause finding against plaintiff.

10.     All other conditions precedent to bringing this action, if any, have been satisfied, have been waived or would have been futile.

## General Allegations

Officer Mitchell's was well trained and qualified.

11.     During 2014, Officer Mitchell started to work for the City of Miami Beach as a police officer, a position for which he was qualified.

12.     Officer Mitchell previously worked for the City of North Miami's police department beginning in 1978 as a police officer in the Uniform Patrol Division and from which he retired May 1, 2004 as a Lieutenant in the same Division.

13.     Additionally, Officer Mitchell graduated from the Miami-Dade's Fire Academy; worked previously as a firefighter for the Town of Jupiter Island; and was triple certified as a police officer, firefighter and emergency medical technician ("EMT").

14.     Officer Mitchell, in addition to the Associate's Degree in Criminal Justice he earned in 1978, has a Bachelor's Degree in Human Resources Management and a Master's Degree in Public Administration, awarded by Barry University in 1996 and 2018, respectively.

The City of Miami Beach repeatedly passed Officer Mitchell over for assignments and special units.

15.     Not long after being hired by the City of Miami Beach, as early as January 2015, Officer Mitchell started to apply for positions for which he was

qualified in the City's Police Department, including for positions he held previously with other agencies.

16.    Notwithstanding his excellent qualifications and extensive prior experience as a law enforcement officer, The City passed over Officer Mitchell for all of them, including the following:

17.    In January 2015 and February 2016, Officer Mitchell applied twice and was passed over for two newly created positions for sworn officers to be placed in two Redevelopment Areas within Miami Beach described in the Chief's budget as part of the City's "continued community policing initiatives."

18.    Officer Mitchell had served previously many years in the City of North Miami's Community Patrol, the "Officer Friendly" part of his job, including two years as a Sergeant in the Community Resource Unit and performed volunteer work with community kids as a mentor and chess coach for the Police Athletic League.

19.    Officer Mitchell also applied and was passed over for three positions in or about April 2017, including as a neighborhood resource officer and two beat positions.

20.    Officer Mitchell does not have the names, ages, genders or ethnic background yet of the individuals selected for the positions applied for in 2015, 2016 and 2017, and others in 2018 as alleged in paragraph 21 , but in light of subsequent events, includes reference to them here because he believes they will show motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident or, alternatively, will show that both the older examples and the more recent refusals to assign Officer Mitchell to certain assignments and special units constitute parts of a continuing violation of anti-discrimination laws because the City continuously maintained illegal employment practices.                .

21.    Officer Mitchell, in 2018, applied for and was denied assignments as a Background Investigator, a Fire Investigator, a School Resource Officer and two Ocean Drive beats and, in each instance except the two Ocean Drive beats (the names, ages, genders and ethnicities of the selectees for which positions are unknown at this time), the position Officer Mitchell sought was given to a substantially younger, non-Caucasian man or woman.

22.    As to the Fire Investigator position, the City told Officer Mitchell he would be notified when a decision was made. Officer Mitchell was never informed and discovered in August 2020 the position had been filled by a thirty-something-year old Hispanic candidate.

23.    Officer Mitchell in 2019 applied for three additional beat positions (the names, ages, genders and ethnicities of the selectees for which positions are unknown at this time), and additionally a School Resource Officer ("SRO") position and for a position on the Hostage Negotiator Team ("HNT"), for all of which he was passed over and for the SRO position two Hispanic men in their 30s were selected and for the HNT position five Hispanic men and one Black man were chosen, along with a Black woman, then age 52 and a Hispanic female in her 30s.

24.    The positions applied for by Officer Mitchell and the ages, sex and race of those selected, where known, appear on the chart that follows:

| DATE | ASSIGNMENT | DECISION | RECIPIENT | AGE | SEX | RACE |
|---|---|---|---|---|---|---|
| 1/4/2015 | RDA | Denied | | | | |
| 2/7/2016 | RDA | Denied | | | | |
| 4/3/2017 | NEIGHBORHOOD RESOURCE OFFICER | Denied | | | | |
| 4/23/2017 | WALKING BEAT/DAY | Denied | | | | |
| 4/28/2017 | SOUTH OF 5th BEAT | Denied | | | | |
| 1/20/2018 | BACKGROUND | Denied | D.Cure-Twede | 35 | F | Hispanic |
| 1/22/2018 | FIRE INVESTIGATOR | Denied | J. Fernandez | 35 | M | Hispanic |
| 4/25/2018 | SCHOOL RESOURCE OFFICER (SRO) | Denied | R. Noriega | 40+ | M | Hispanic |
| | | | O. Marrero | 40+ | M | Hispanic |
| | | | H. Guzman | 30+ | M | Hispanic |
| | | | D. Gotsis | 40+ | M | Hispanic |
| | | | S. Thomas | 40+ | M | Black |
| | | | S. Stringer | 30+ | F | Black |
| 10/11/2018 | OCEAN DRIVE FOOT | Denied | | | | |
| 10/15/2018 | OCEAN DRIVE BEAT | Denied | | | | |
| 1/30/2019 | MIDDLE WALKING BEAT | Denied | | | | |
| 4/5/2019 | 41st STREET BEAT | Denied | | | | |
| 6/26/2019 | NORTH END WALKING | Denied | | | | |
| 7/26/2019 | SCHOOL RESOURCE OFFICER (SRO) | Denied | E. Alba | 30+ | M | Hispanic |
| | | | A. Inocencio | 30+ | M | Hispanic |
| 8/18/2019 | HOSTAGE NEGOTIATOR TEAM (HNT) | Denied | Y. Acevedo | 30+ | M | Hispanic |
| | | | L. Azicri | 30+ | M | Hispanic |
| | | | R. Fujita | 30+ | M | Hispanic |
| | | | M. Garcia | 30+ | M | Hispanic |
| | | | A. Guzman | 40+ | M | Hispanic |
| | | | L. Hicks | 40+ | M | Black |
| | | | D. Martineau | 52 | F | Black |
| | | | V. Thayer | 35+ | F | Hispanic |

25.    During the interview for a place on the HNT, Lieutenant Elise Spina-Taylor asked Officer Mitchell, "How long before you plan to retire?",

explaining, "because we don't want to invest all this training if you're about to retire."

26.     At least two of the positions Officer Mitchell applied for, Fire Investigator and the HNT position, would have resulted in a raise for Officer Mitchell had he been selected.

27.     Officer Mitchell also was not provided with training and opportunities provided to other officers not in his protected classes, such as hostage negotiation scenario training provided to other substantially younger Black and Hispanic candidates for the hostage negotiation team the same year as the interviews, and the younger, female officer, Vivian Thayer, whom Officer Mitchell was informed was allowed to join the HNT without following the formal interview process he had to follow.

<u>Officer Mitchell was scrutinized more harshly than younger and non-Caucasian police officers.</u>

28.     Officer Mitchell also was subjected to hyper-scrutiny not directed to the substantially younger or non-white officers, including unfairly harsh annual evaluations that impeded Officer Mitchell's goal of progressing while at the City of Miami Beach but were not so low (individual ratings below 5 and overall below 50) as to trigger his right to an appeal.  More particularly:

        a.     Officer Mitchell's 2017 evaluation, covering the period from, February 4, 2016 to February 3, 2017, had an overall final score of 67.50, which was in the "Meets Expectations" range (79.9 - 50);

b.      Officer Mitchell's 2018 evaluation, covering the period from February 10, 2017 to January 29, 2018, had an overall final score of 63.73 or "Meets Expectations;"

c.      Officer Mitchell's 2019 evaluation, covering the period from February 5, 2018 to February 5, 2019, had an overall final score of 66.35 or "Meets Expectations;"

d.      Officer Mitchell's 2020 evaluation, covering the period from February 11, 2019 to February 10, 2020, had an overall final score of 70.42 or "Meets Expectations."

e.      Also, Officer Mitchell's 2020 annual evaluation (and the attendant pay raise) that should have been issued in February 2020  was delayed, without explanation, despite his verbal and written complaints to his supervisors and the human resources director, until August 2020.

f.      Many, if not all the special assignments applied for by Officer Mitchell required a minimum overall rating of 70 to qualify. By setting this rating as a qualification standard, while allowing a highly subjective rating system, the City was able to effectively block certain officers, including Officer Mitchell, from advancement and more lucrative special assignments.

29.     Officer Mitchell also was subjected to an internal affairs investigation for violating the City's social media policy while younger Hispanic and Black officers were intentionally and prominently featured by the City in official City postings on the internet in situations that could be viewed as compromising. Particularly:

a.      Officer Mitchell, while on duty, laughed and posed for photograph with a man who had been standing next to a car who offered Officer Mitchell "what appeared to be a bundle of money" for all the hard work he did, which Officer Mitchell indicated he could not accept, and then placed in his pants pocket, after being told it was production money used for movies and TV shows.

b.      Unbeknownst to Officer Mitchell, someone had posted a video of his encounter with the man with the title "Miami Millionaire Prank" on [www.youtube.com](www.youtube.com) (an online video streaming platform).

c.      Meanwhile, the police department's public information officer had posted on the internet still photographs of younger, Black and Hispanic officers in the company of scantily clad women, allegedly to give the impression that the Miami Beach Police Department engaged in community-based policing and is friendly towards beach-goers, for their involvement in which the younger Black and Hispanic officers were not investigated or disciplined.

30.     The harsher treatment Officer Mitchell received is similar to what at least to two other over-50 police officers have experienced. Particularly:

a.      Officer Eric Schultz, who as part of an investigation by the Equal Employment Opportunity Commission ("EEOC") of Officer Schultz's own age discrimination complaint, informed the EEOC via e-mail August 9, 2019 how he and Officer Mitchell have been referred to as "dinosaurs" and "systematically excluded" from assignments to earn overtime.

b.   Officer Schultz's e-mail to the EEOC also referenced overtime for the mid-beach boardwalk given to "very junior units," which his email indicated was due to age discrimination.

31.   The conduct of defendant and its agents referenced in paragraphs 15 through 30 above discriminated against Officer Mitchell with respect to compensation, terms, conditions, or privileges of employment.

### Count I — Age Discrimination in Violation of the ADEA

32.   Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(a), 5-8, 10, 11-31.

33.   The ADEA provides, in pertinent part, at § 623(a) that:

It shall be unlawful for an employer —

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . .

34.   The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon Officer Mitchell because of his age, and, thus, constituted age discrimination as proscribed by the ADEA.

35.   Defendant's actions, as more particularly alleged above, constituted violations of the ADEA, which were done willfully and with knowing or reckless disregard of the ADEA's proscriptions.

36.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has lost wages and benefits in the past and will suffer additional losses in the future.

37.    Defendant's treatment of plaintiff constituted a willful violation of the ADEA, entitling plaintiff to liquidated damages.

38.    Plaintiff is entitled to recover attorney's fees and litigation expenses under 29 U.S.C. § 626(b).

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against age discrimination under the ADEA;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the ADEA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Four***, enter a judgment for plaintiff and against defendant for damages, including liquidated damages;

***Five***, grant plaintiff his costs and reasonable attorney's fees, and

***Six***, grant plaintiff such other and further relief as the circumstances and law provide.

### Count II — Retaliation in Violation of the ADEA

39.    Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(c), 5-8, 10, 11-31.

40.    The ADEA provides, in pertinent part, at 29 U.S.C. § 623(d) as follows:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

41.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of Officer Mitchell's protected activity, and, thus, constituted retaliation as proscribed by the ADEA.

42.    Defendant's actions, as more particularly alleged above, constituted violations of the ADEA, which were done willfully and with knowing or reckless disregard of the ADEA's proscriptions.

43.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has lost wages and benefits in the past and will suffer additional losses in the future.

44.    Defendant's treatment of plaintiff constituted a willful violation of the ADEA, entitling plaintiff to liquidated damages.

45.     Plaintiff is entitled to recover attorney's fees and litigation expenses under 29 U.S.C. § 626(b).

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights retaliation under the ADEA;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the ADEA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Four***, enter a judgment for plaintiff and against defendant for damages, including liquidated damages;

***Five***, grant plaintiff his costs and reasonable attorney's fees, and

***Six***, grant plaintiff such other and further relief as the circumstances and law provide.

### Count III — Race Discrimination in Violation of the Title VII

46.     Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(b), 5-8, 10, 11-24, 26-29, and 31.

47.     Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part, at 42 U.S.C. § 2000e-2(a) as follows:

It shall be an unlawful employment practice for an employer —

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

48.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his his race, and, thus, constituted race discrimination as proscribed by Title VII.

49.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

50.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

51.    Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against race discrimination under Title VII;

*Two*, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

*Three*, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under Title VII and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Four*, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

*Five*, grant plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), and

*Six*, grant plaintiff such other and further relief as the circumstances and law provide.

### Count IV — Sex Discrimination in Violation of the Title VII

52.     Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(b), 5-8, 10, 11-21, 23, 24, 26, 27, 28 and 31.

53.     Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part, at 42 U.S.C. § 2000e-2(a) as follows:

It shall be an unlawful employment practice for an employer —

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

54.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his sex, and, thus, constituted sex discrimination as proscribed by the Title VII.

55.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

56.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

57.    Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

**One**, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against sex discrimination under Title VII;

**Two**, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

**Three**, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under Title VII and to make plaintiff whole through

instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

**Four**, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

**Five**, grant plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), and

**Six**, grant plaintiff such other and further relief as the circumstances and law provide.

## Count V  — National Origin Discrimination in Violation of the Title VII

58.    Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶  1-3, 4(b), 5-8, 10, 11-24, 26-29, and 31.

59.    Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part, at 42 U.S.C. § 2000e-2(a) as follows:

It shall be an unlawful employment practice for an employer —

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

60.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his

national origin, and, thus, constituted national origin discrimination as proscribed by Title VII.

61.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

62.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

63.    Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

*One*, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against national origin discrimination under Title VII;

*Two*, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

*Three*, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under Title VII and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Four*, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

*Five*, grant plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), and

*Six*, grant plaintiff such other and further relief as the circumstances and law provide.

### Count VI — Retaliation in Violation of Title VII

64.     Plaintiff realleges and incorporates in this Count the matters set forth in  ¶¶ 1-3, 4(c), 5-8, 10 and 11-24, 26-29 and 31.

65.     Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part, at 42 U.S.C. § 2000e-3(a) as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

66.     The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his protected activity, and, thus, constituted retaliation as proscribed by Title VII.

67.     As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

68.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

69.    Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against retaliation under Title VII;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's retaliatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under Title VII and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Four***, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

***Five***, grant plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), and

***Six***, grant plaintiff such other and further relief as the circumstances and law provide.

## Count VII — Age Discrimination in Violation of the FCRA

70.    Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(a), 5-7, and 9-31.

71.    Section 760.10(1), FLA. STAT., provides, in pertinent part:

It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

72.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his age, and, thus, constituted age discrimination as proscribed by the FCRA.

73.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

74.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

75.    Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT.

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

**One**, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against age discrimination under the FCRA;

**Two**, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

**Three**, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

**Four**, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

**Five**, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT.; and

**Six**, grant plaintiff such other and further relief as the circumstances and law provide.

### <u>Count VIII — Race Discrimination in Violation of the FCRA</u>

76.     Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(b), 5-7, 9-10, 11-24, 26-29, and 31.

77.     Section 760.10(1), FLA. STAT., provides in pertinent part:

It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

78.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his race, and, thus, constituted race discrimination as proscribed by the FCRA.

79.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

80.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

81.    Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT.

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

**One**, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against race discrimination under the FCRA;

**Two**, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

*Three*, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Four*, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

*Five*, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT.; and

*Six*, grant plaintiff such other and further relief as the circumstances and law provide.

### Count IX — National Origin Discrimination in Violation of the FCRA

82.   Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(b), 5-7, 9-10, 9-10, 11-24, 26-29, and 31.

83.   Section 760.10(1), FLA. STAT., provides in pertinent part:

It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

84.   The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of ++his

national origin, and, thus, constituted national origin discrimination as proscribed by the FCRA.

85.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

86.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

87.    Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), Fla. Stat.

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against national origin discrimination under the FCRA;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

*Four*, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

*Five*, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT.; and

*Six*, grant plaintiff such other and further relief as the circumstances and law provide.

## Count X — Sex Discrimination in Violation of the FCRA

88.    Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 4(b), 5-7, 9-10, 11-21, 23, 24, 26, 27, 28 and 31.

89.    Section 760.10(1), FLA. STAT., provides in pertinent part:

It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.
(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

90.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his sex, and, thus, constituted sex discrimination as proscribed by the FCRA.

91.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses,

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

92.   The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

93.   Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT.

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

**One**, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against sex discrimination under the FCRA;

**Two**, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

**Three**, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

**Four**, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

**Five**, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT.; and

**Six**, grant plaintiff such other and further relief as the circumstances and law provide.

## Count XI — Retaliation in Violation of the FCRA

94.    Plaintiff realleges and incorporates in this Count the matters set forth in  ¶¶ 1-3, 4(c), 5-7, 9-10, 11-31.

95.    Section 760.10(7), FLA. STAT., provides in pertinent part:

(7) It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

96.    The treatment to which defendant, through its agents and employees, subjected Officer Mitchell was visited upon him because of his protected activity, and, thus, constituted retaliation as proscribed by the FCRA.

97.    As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

98.    The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

99.    Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT.

WHEREFORE, plaintiff, Robert Mitchell, prays that this Court will:

**One**, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against retaliation under the FCRA;

**Two**, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

**Three**, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

**Four**, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

**Five**, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT.; and

**Six**, grant plaintiff such other and further relief as the circumstances and law provide.

## Demand for Jury Trial

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,

THE AMLONG FIRM
500 NE  Fourth St., Suite 101
Fort Lauderdale, Florida 33301
(954) 462-1983
EService@TheAmlongFirm.com


 /s/ *Karen Coolman Amlong*
KAREN COOLMAN AMLONG
Florida Bar Number 275565
Kamlong@TheAmlongFirm.com
**Attorneys for Plaintiff,**
      **Robert Mitchell**

\\amlong3\cpshare\CPWin\HISTORY\210802_0001\177B.43