United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Robert Mitchell, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-22835-Civ-Scola |
| | ) |
| City of Miami Beach, Defendant. | ) |

### Order Granting Motion to Dismiss

Plaintiff Robert Mitchell, a City of Miami Beach police officer, complains that the City discriminated against him, as a sixty-five-year-old, white male and native of the United States when he applied for, but was denied, eighteen different assignments within the police department. (Am. Compl. ("Compl." or "complaint"), ECF No. 21.) Mitchell also says he was discriminated against when he was denied training that would have assisted him in procuring some of the assignments he sought. (*Id.*) He sets forth eight counts: age-based claims under the Age Discrimination in Employment Act and the Florida Civil Rights Act (counts one and two); race-based claims under Title VII of the Civil Rights Act of 1964 and the FCRA (counts three and four); national-origin-based claims under Title VII and the FCRA (counts five and six); and gender-based claims under Title VII and the FCRA (counts seven and eight). (*Id.*) In responding to Mitchell's complaint, the City urges dismissal, arguing Mitchell failed to either (1) exhaust his administrative remedies or (2) plead sufficient facts to establish a prima facie case of discrimination under any of the statutory schemes he claims the City violated. (Def.'s Mot., ECF No. 25.) Mitchell opposes the motion, maintaining that he has indeed set forth sufficient facts establishing a prima facie case of age, race, national origin, and gender discrimination, while, at the same time, declining to meaningfully address the procedural defects the City identifies. (Pl.'s Resp., ECF No. 28.) The City has timely replied. (Def.'s Reply, ECF No. 29.) After review, the Court agrees with the City and **grants** its motion (**ECF No. 25**), thus **dismissing** Mitchell's case.

### 1. Background[1]

Mitchell is a sixty-five-year old, white, non-Hispanic male police officer whose nation of origin is the United States. (Compl. ¶1, 45.) Mitchell's law-enforcement work began in the City of North Miami in 1978, in the Uniform

---

[1] The Court accepts the complaint's *factual* allegations, as set forth below, as true for the purposes of evaluating Mitchell's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Patrol Division. (*Id.* ¶ 10.a.) Mitchell retired from that division, as a lieutenant, in 2004. (*Id.*) He then started working for the City of Miami Beach in 2014, as a police officer. (*Id.* 10.)

Throughout his career, Mitchell acquired various degrees, public-safety experiences, and certifications: he earned an associate's degree in criminal justice, in 1978; earned a bachelor's degree in human-resources management, in 1996; earned a master's degree in public administration, in 2018; graduated from the Miami-Dade Fire Academy; worked previously as a firefighter for the Town of Jupiter Island; was certified as a police officer, firefighter, and emergency medical technician; specialized in community policing, volunteering with community youths as a mentor and chess coach for the Police Athletic League; and was certified as bilingual in English and Spanish. (*Id.* ¶¶ 10.a.–d.) Mitchell also suffered a serious injury, in March 2021, when he was attacked by someone he describes as a drunken, spring breaker. (*Id.* ¶ 13.) The encounter so badly damaged his right hand that he can no longer handle a firearm. (*Id.*)

Between January 20, 2018, and December 20, 2019, Mitchell applied, but was rejected, for various openings within the Miami Beach police department. (*Id.* ¶ 12.) He applied to one position as a background investigator; one as an arson investigator; eight openings for school-resource officers; and eight openings on the hostage-negotiating team. (*Id.* ¶ 14.) During his panel interview for the hostage-negotiating team, the chair asked Mitchell how long it would be before he retired, further explaining that the department did not "want to invest all this training if you're about to retire." (*Id.* ¶ 15.) Mitchell assured the panel that he did not intend to retire any time soon. (*Id.*) Regardless, Mitchell's application was rejected, and he was told that "he was not chosen because he did not do better in the interviews." (*Id.* ¶¶ 1, 14.) Notably, Mitchell had previously been denied the opportunity for special training for the hostage-negotiating team application process which, he says, would have bolstered his credentials and helped him perform better during the interview process. (*Id.* ¶ 1, 10, 17.) In contrast, Mitchell points out, younger officers, none of whom were non-Hispanic white males, were selected for this training. (*Id.* ¶ 10.)

Mitchell describes twelve of the successful applicants for these eighteen positions as Hispanic males; two as Hispanic females; two as Black males; and two as Black females. (*Id.*) The positions all would have been accompanied by salary increases; provided opportunities for overtime; and been more prestigious than road patrol. (*Id.* ¶ 13.) Further, Mitchell says that, except for the position with the hostage-negotiating team, all of the other positions would have been less dangerous than his current position. (*Id.*)

Mitchell filed charges of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations on November 27, 2019, and May 8, 2020. (*Id.* ¶ 6.) Most of the positions were filled in January and April 2018 but two of the school-resource officer positions were not filled until July 26, 2019. (*Id.* ¶ 14.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 3. Discussion

### A. Mitchell failed to exhaust his administrative remedies.

The City submits that all but two of the denials Mitchell complains of are time barred. (Def.'s Mot. at 5.) Mitchell did not challenge this argument, in his response, thereby conceding the point. Further, as explained below, the Court finds the City's arguments well taken.

Prior to filing a civil action for employment discrimination under the ADEA, Title VII, or he FCRA, a plaintiff first must file a charge of discrimination

with the EEOC. *Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1279
(11th Cir. 2004) (Title VII); *Rainey v. United Parcel Serv., Inc.*, 816 F. App'x 397,
401 (11th Cir. 2020) (FCRA); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238
(11th Cir. 2004) (ADEA). Importantly, the charge of discrimination must be
timely. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). With
respect to a Title VII or ADEA violation, only those claims arising within 300
days prior to the filing of the discrimination charge are actionable. *See
Hewerdine v. Eli Lilly & Co.*, 3:20-CV-659-MMH-JRK, 2021 WL 707185, at *4
(M.D. Fla. Feb. 2, 2021), *report and recommendation adopted,* 3:20-CV-659-
MMH-JRK, 2021 WL 706022 (M.D. Fla. Feb. 23, 2021) ("both statutes require
an almost identical filing with the appropriate agency within 300 days after the
alleged discriminatory act") (cleaned up). FCRA claims, on the other hand,
must be filed within 365 days of the alleged unlawful employment practice.
*Avila v. Childers*, 212 F. Supp. 3d 1182, 1188 (N.D. Fla. 2016).

Mitchell's initial charge was filed on November 27, 2019.[2] (Ex. A., ECF
No. 25-1, 2.) Accordingly, any claim under the ADEA or Title VII arising from
an unlawful employment practice that occurred before January 31, 2019—300
days prior—is time barred. Similarly, any claim under the FCRA that occurred
before November 27, 2018—365 days prior—is also time barred. This
eliminates all of the denied applications Mitchell complains of except for the
two school-resource-officer positions Mitchell applied for which were filled on
July 26, 2019. Accordingly, the Court dismisses Mitchell's claims under the
ADEA, Title VII, or the FCRA that are based on the denials described in the
complaint's paragraphs 14.a. (the background-investigator-position denial on
January 20, 2018); 14.b. (the arson-investigator position denial on January 22,
2018); 14.c. (the six school-resource-officer position denials on April 25, 2018);
and 14.e. (the eight hostage-negotiating-team position denials, also on April 25,
2018). (Compl. ¶ 14.)

Additionally, the City also points out that a "plaintiff's judicial complaint
is limited by the scope of the EEOC investigation which can reasonably be
expected to grow out of the charge of discrimination." (Pl.'s Resp. at 6 (quoting

---

[2] The City attached copies of Mitchell's charges to its motion to dismiss. (Ex. A., 25-1.) Because
the authenticity of these documents is not disputed and because they are central to Mitchell's
claims, the Court may consider them without converting this motion into a motion for
summary judgment. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th
Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic
document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").
Indeed, "[i]n discrimination cases, the EEOC charge is a document that courts routinely
consider when ruling on motions to dismiss, even if it was not attached to a pleading." *Chesnut
v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013).

*Gregory*, 355 F.3d at 1280 (cleaned up)).) Accordingly, "allegations in a judicial complaint of new acts of discrimination are inappropriate." *Little v. CRSA*, 744 F. App'x 679, 682 (11th Cir. 2018). Here, in Mitchell's November 2019 charge, which is the charge that mentions the two non-time-barred, school-resource-position denials, Mitchell complains only that the applicants who were accepted were "substantially younger Hispanics." (Ex. A at 2.) Neither this initial charge nor his amended May 2020 charge references any facts that show Mitchell was discriminated against based on his gender or national origin—that origin being the United States (Compl. ¶ 45). Although Mitchell checked two boxes, referencing that his discrimination claims were based on both "sex" and "national origin," such perfunctory references, without more, are not enough to consider the issues to have been properly raised through the administrative process. "Indeed, checking the correct box alone is not sufficient to satisfy the filing requirement when no factual particulars relating to the claim are disclosed to the EEOC." *Houston v. Army Fleet Services, L.L.C.*, 509 F. Supp. 2d 1033, 1043 (M.D. Ala. 2007) (citing *Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1225 (11th Cir.2000) in which the court noted that the employee failed to mention *facts* relating to a retaliation claim "even though [the] employee checked the retaliation box on the form")). Accordingly, the Court also dismisses the counts based on national-origin discrimination (counts five and six) and gender discrimination (counts seven and eight) under both Title VII and the FCRA, in their entireties.

### B. Mitchell fails to allege facts showing the City intentionally discriminated against him.

As to Mitchell's remaining claims, and even if his other claims were not time barred, the complaint fails to supply facts that would satisfy the elements of any of Mitchell's claims of discrimination under the ADEA, Title VII, or the FCRA.[3] "[C]omplaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal.*" *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. 2011). Thus, Mitchell's complaint must contain "sufficient factual matter" to support a reasonable inference that the

---

[3] Mitchell's allegations of age, race, national origin, and gender under the ADEA, Title VII, and the FCRA will all be analyzed together. *See Florida State Univ. v. Sondel*, 685 So. 2d 923, 925 (Fla. 1st DCA 1996) ("The [FCRA], as amended, was patterned after Title VII of the Civil Rights Acts . . . as well as the Age Discrimination in Employment Act . . . . Federal case law interpreting Title VII and the ADEA is applicable to cases arising under the Florida Act."); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act."); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 309 (1996) (applying title VII analysis to ADEA claim).

City engaged in intentional discrimination against him in relation to its denials of his various applications for positions within the police department. *Henderson*, 436 Fed. App'x at 937. There are any number of ways Mitchell can do this, using "either direct evidence or circumstantial evidence to show . . . discrimination." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

Since Mitchell does not set forth any allegations of direct evidence of discrimination, one way Mitchell could state his discrimination claims, through circumstantial evidence, is by pleading facts that could establish the City's discrimination through the *McDonnell Douglas* framework. *See Jaffe v. Birmingham Gastroenterology Associates, P.C.*, 2:20-CV-01821-KOB, 2021 WL 4220356, at *2 (N.D. Ala. Sept. 16, 2021) ("[T]he traditional methods of proving Title VII claims remain relevant, as helpful guides to the determination of the issue.") (cleaned up). Under the *McDonnell Douglas* framework, a plaintiff bears the burden of establishing a prima facie case of discrimination by demonstrating that (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the job or benefit at issue; and (4) he was replaced or passed over by a younger employee or the employer treated employees who were not members of the plaintiff's protected class more favorably under similar circumstances. *Jenkins*, 26 F.4th at 1249. As the City points out, Mitchell has utterly failed to plead facts that would allow the Court to reasonably infer that he satisfies, at a minimum, the fourth prong.

As to the fourth prong, Mitchell "must identify a comparator outside of his protected class who was *similarly situated in all material respects*, yet was treated more favorably under the same circumstances." *Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020) (emphasis in original) (otherwise cleaned up). In opposition to the City's motion, Mitchell insists that his pleading burden is "not onerous" (Pl.'s Resp. at 3 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))) and that he has, generally, "sufficiently alleged enough specifics to plead a prima facie case" that the City discriminated against him (Pl.'s Resp. at 6). Onerous or not, Mitchell must still meet *Twombly's* plausibility standards by pleading at least "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. While a Title VII, ADEA, or FCRA plaintiff need not set forth evidence establishing a prima facie case under the *McDonnell* framework in order to survive dismissal, this does not absolve such a plaintiff from alleging actual facts which support a claim of gender discrimination. *See Pouyeh v. UAB Dept. of Ophthalmology*, 625 Fed. App'x 495, 497 (11th Cir. 2015) (holding that a complaint must contain factual allegations demonstrating, either directly or circumstantially, that a defendant's actions were discriminatory); *Henderson*, 436 F. App'x at 938

(requiring a plaintiff to plead facts that "raise[] a plausible inference that [the defendant] discriminated against [the plaintiff]").

Ultimately, Mitchell does not plead a single fact showing that his putative comparators are similarly situated. Instead, he simply names eighteen other department employees who apparently received the assignments Mitchell also sought but did not obtain. (Compl. ¶ 14.) Mitchell recites only these employees' names, ages (or approximate ages), genders, and races. (*Id.*) And while Mitchell broadly describes the other officers as "less experienced," as compared to him, notably absent is a single fact about any of their actual qualifications. At bottom, Mitchell's allegations, at most, are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore "do not suffice." *Watts v. Ford Motor Co.*, 519 F. App'x 584, 586 (11th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). While a plaintiff complaining of workplace discrimination need not set forth every detail of his employment or every single instance of the discriminatory conduct he endured, he must nonetheless provide at least some "nonconclusory descriptions of specific, discrete facts of the who, what, when, and where variety" that plausibly show he is actually entitled to relief. *Watts*, 519 F. App'x at 587 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)); *see Veale v. Florida Dept. of Health*, 2:13-CV-77-FTM-38UAM, 2013 WL 5703577, at *5 (M.D. Fla. July 29, 2013) (requiring "allegations of specific facts to explain how the disparate treatment occurred" in order to properly plead discrimination); *see also Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, 14-20321-CIV-MORENO, 2014 WL 3591600, at *8 (S.D. Fla. July 18, 2014) (Moreno, J.) (dismissing discrimination claims where the plaintiff's conclusory assertions that Hispanic males were promoted to the exclusion of African American women were "without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff" and, were, therefore, "insufficient").

Nor do any of Mitchell's other allegations, taken together, otherwise "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (cleaned up). A plaintiff may meet this standard by showing, "among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (cleaned up). "The 'convincing mosaic' method of proof can be a fallback for plaintiffs," like Mitchell, "who fail to allege a similarly

situated comparator under *McDonnell Douglas.*" *Jaffe*, 2021 WL 4220356, at *4. Despite being a fallback, however, the bar is still high.

Again, Mitchell's allegations come up glaringly short. Aside from listing generic facts about his coworkers' ages, ethnicities, races, and genders, Mitchell's sole factual assertion regarding the City's purported discrimination against him is that the chair of the panel interviewing him for the hostage-negotiating team asked him, "How long before you plan to retire?" and then explained, "Because we don't want to invest all this training if you're about to retire." (Compl. ¶ 15.) This solitary allegation, however, falls far short of painting a "convincing mosaic" that Mitchell's application denials were motivated by any kind of discrimination against him: it hardly amounts to a mosaic at all, never mind a convincing one. *See Taylor v. Farm Credit of N. Florida, ACA*, 4:20-CV-59-AW-MJF, 2021 WL 5148022, at *5 (N.D. Fla. Oct. 6, 2021) (describing a mosaic, in the context of a discrimination claim, as "compris[ing] many parts which combine to form an overall picture").

Furthermore, although retirement is certainly correlated with age, that correlation alone is insufficient to establish age discrimination. *See Dilla v. West*, 179 F.3d 1348, 1349 (11th Cir. 1999) (affirming rejection of age discrimination claim where the trial court concluded that "the mere fact that there exists a perfect correlation, or even a direct link, between age and the factor purportedly relied upon by the employer does not perforce mean that the employer has impermissibly relied on age"). This seems to be especially true when, as here, as provided for by the complaint, the concern about retirement is tied to future staffing concerns. Moreover, Mitchell does not supply a single other fact that would support a finding that the City's denial of Mitchell's application was based on any sort of inaccurate or denigrating age-based stereotype.

To summarize, the Court finds the City's argument that Mitchell has failed to plead facts establishing discrimination against him under either the ADEA, Title VII, or the FCRA well taken. Mitchell himself appears to concede as much by failing to adduce any real opposition to the vast majority of the City's arguments. *See Lisa, S.A. v. Gutierrez Mayorga*, 240 F. App'x 822, 824 (11th Cir. 2007) ("Failure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal.") (cleaned up); see also *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (cleaned up). And, upon review, the Court readily finds that Mitchell's allegations amount to, at best, nothing more than legal conclusions and

formulaic recitations of the elements of discrimination claims. While "these allegations might have survived a motion to dismiss prior to *Twombly* and *Iqbal*[,] now they do not." *Ansley v. Florida, Dept. of Revenue*, 409CV161-RH/WCS, 2009 WL 1973548, at *2 (N.D. Fla. July 8, 2009) (requiring a "plaintiff in an employment-discrimination case [to] allege facts that are either (1) sufficient to support a plausible inference of discrimination, or (2) sufficient to show, or at least support an inference, that he can make out a prima facie case under the familiar burden-shifting framework set forth in *McDonnell*").

### 4. Conclusion

For the foregoing reasons, the Court **grants** the City's motion (**ECF No. 25**), thus **dismissing** Mitchell's case, **without prejudice, in part**, as to the portion of his complaint that the Court dismissed based on his failure to exhaust his administrative remedies; and **with prejudice, in part**, as to Mitchell's remaining claims, based on his failure to state a claim. Further, the Court notes that, even if Mitchell *had* exhausted his administrative remedies, those claims would have also, in any event, failed on their merits. Because the Court finds the complaint due to be dismissed for these reasons, it declines to address the other alleged insufficiencies the City points to.

Additionally, the Court dismisses Mitchell's complaint **without leave to amend**. Mitchell has not requested leave to amend; nor has he indicated any inclination to do so. *See Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."); *compare with  Carter v. HSBC Mortg. Services, Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015) ("A pro se plaintiff, however, *must* be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, at least where a more carefully drafted complaint might state a claim.") (cleaned up) (emphasis in original). Further, Mitchell has already amended his complaint once, in response to the City's first motion dismiss and, in any event, the deadline to amend the pleadings has long since passed.

Finally, the Clerk is directed to **close** this case. Any pending motions are

denied as moot.

      **Done and ordered**, at Miami, Florida, on May 27, 2022.

Robert N. Scola, Jr.
United States District Judge